## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

GRAHAM SCHIFF,

    Petitioner,

v.

WARDEN,

    Respondent.

Civil Action No.: TDC-22-3332

## MEMORANDUM OPINION

Self-represented Petitioner Graham Schiff has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he collaterally attacks his 2021 convictions in the Circuit Court for Montgomery County, Maryland for the state law crimes of stalking and harassment. The Petition is fully briefed, and the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be DISMISSED and DENIED.

## BACKGROUND

On September 26, 2019, Schiff was charged in a three-count information in the Circuit Court for Montgomery County ("the Circuit Court") with stalking, Md. Code Ann., Crim. Law § 3–802 (LexisNexis 2021), violation of a peace order, Md. Code Ann., Crim. Law § 3–1508, and harassment, Md. Code Ann., Crim. Law § 3–803. The charges arose from a series of communications Schiff sent to and about a female Assistant State's Attorney for Montgomery County who had successfully prosecuted Schiff in 2018 for stalking a different victim.

## I.    Pretrial History

On March 9, 2020, the case proceeded to a bench trial before Judge Gary E. Bair, at which Schiff was found guilty of stalking and harassment and acquitted of violation of a peace order. Following his conviction, Schiff filed a Motion for a New Trial, which was granted on July 23, 2020 because Schiff's trial counsel had failed to file pre-trial motions, had persuaded Schiff to waive his right to a jury trial based on insufficient information, and had failed to appear for the second day of trial.

Prior to his new trial, Schiff filed multiple motions and petitions, including several in which he asserted that the charges violated his right to free speech under the First Amendment to the United States Constitution. These filings included a July 27, 2020 "Petition to Dismiss for Failure to Charge Criminal Offenses"; an August 14, 2020 "Petition to Dismiss Due to Unconstitutional Vagueness" in which he argued that the stalking charge should be dismissed because Maryland's stalking statute is unconstitutionally vague; an August 17, 2020 Motion *in Limine* to Exclude Evidence, in which he argued that the emails and other written communications underlying the charges were inadmissible because they were protected speech under the First Amendment; and a September 23, 2020 "Petition to Compel Statement by Presiding Judge on Probable Cause and Overall Legality of Charges" in which he questioned how he could be criminally charged for speech that was protected by the First Amendment. On September 30, 2020, the Circuit Court (Cho, J.) held a hearing at which it denied Schiff's July 27, 2020 and his August 14, 2020 Petition and found that the Maryland criminal statutes prohibiting stalking and harassment are not unconstitutionally vague. On October 16, 2020, the Circuit Court held another hearing at which it denied Schiff's August 17, 2020 Motion *in Limine* and his September 23, 2020 Petition.

## II.    Trial and Sentence

During the jury trial that began on May 24, 2021, at which Schiff represented himself, the following evidence was presented.  In 2018, Schiff was prosecuted in the Circuit Court for the state law crime of stalking.  After he was convicted, Schiff began a series of communications about the female Assistant State's Attorney for Montgomery County ("the ASA") who had prosecuted him in that case.  On March 12, 2018, Schiff wrote a letter to Melissa Weber, a Montgomery County police officer who had investigated that case, that stated in part that he planned to create a "State's Attorney Barbie" which would say certain phrases such as, "Mr. Schiff, I legally consent to you having your way with me" and "Mr. Schiff, it's not weird at all I look like a runway model, am pushing 30, making six figures, and have no wedding ring.  I just haven't met the right guy yet.  It has nothing to do with my personality."  5/24/21(b) Trial Tr. at 89-92, ECF No. 13-12; Trial Ex. 1, Pet. App'x at 5-6, ECF No. 6.  Officer Weber sent a copy of this letter to the ASA.

In a June 27, 2019 email addressed to the ASA's co-counsel in the original stalking case, Schiff posed various questions about that case.  In the email, he specifically stated that he had copied the ASA on the email and placed a heart next to her name.  He also made a reference to the ASA's hometown.

Around July 4, 2019, the ASA saw Schiff in her neighborhood.  Although she did not believe that he had seen her, this incident caused her to fear for her safety.

On July 14, 2019, Schiff sent an email to the ASA in which he accused her of making defamatory statements about him.  The email also stated:

> I cannot help but notice that this aggression towards me happened nearly a week after I filed my most recent motion and almost two weeks after I lost contact with you. I'm assuming you considered some[]thing(s) I wrote in those emails to be offensive, and/or you are threatened by the fact you framed me for a crime I didn't commit (<3).

3

\*\*\*

I would like to firmly apologize for certain statements I made towards you in these e-mails. I should have been more considerate towards your sensitivity. And I am truly sorry.

Trial Ex. 6, Pet. App'x at 10.

On July 16, 2019, Schiff sent another email to the ASA. He revealed that he had identified the ASA's hometown and stated, "I cannot help but notice you are from a prison cult town." Trial Ex. 7, Pet. App'x at 13. He further stated that according to a friend from that area, "it appears I may have been getting virtually abused by a secret society cult" since he was a teenager. *Id*. He then added, "Because of how hot I think you are, I was afraid to bring this up. But after recent events (you going . . . Crazy on me), I think it's time we talk about this." *Id*.

Schiff further stated, "When you make up stories about me, it offends me because I'm assuming you have a boyfriend or fiancé, who is probably involved in this somehow" and that the ASA was continuing "a false narrative" that he is "a dangerous pervert." *Id.*

He continued:

I'll get out, prove my innocence, clear my name, win a bunch of money and marry and have kids with that beautiful State's Attorney, who has no ring on her finger.

\*\*\*

Because my body is all fucked up, when I think about you, I get like a rush of blood and adrenaline to the areas that are all screwed up. I'm telling you this, so you understand, I'm not mentally ill, I've been physically ill for years, and am still in the process of fixing it.

I need to get over you before you get me in trouble . . . I just want to be honest with you about something. After what I saw at that trial, I truly believe you are (by my standards) quite possibly the hottest girl I've ever seen.

*Id*. at 14.

Schiff then commented on a recent appearance by the ASA on television:

4

> I am your biggest fanboy. You could frame me for any crime, or whatever, I think you are so hot and so cool.
>
> To put it gently:
>
> Your TV appearance does not adequately portray your beauty, intellect, charm, or rhetorical skills.

*Id.*

Schiff also described his observations about her appearance during the trial in the original stalking case:

> My one criticism of you from trial, is you always show your emotions on your face, I think it's a trait you picked up from playing competitive sports.
>
> Every time you got flustered, your eyes would bug out like crazy ( I call it [ASA] Crazy eyes), and your facial expressions would show exactly what you were thinking.

*Id.* at 14-15. Schiff then stated that he had called the ASA's voicemail to explain the facts from the original stalking case but hung up as soon as he heard the voicemail message. He proceeded to describe someone else he knew from the ASA's hometown and stated:

> Anyway, I'm sure you'll have me arrested and sent back to prison for writing this, so I'll stop here, but once again, I hope you're doing okay.
>
> ***
>
> I am not unstable, nor am I a threat to you. To be honest, I have had a hard time rationalizing that if I had stayed in school, we could've worked together, but it is what it is, I can find someone else.
>
> You are just simply so attractive, like I said, I have a hard time rationalizing that you don't view me as any different than people I was incarcerated with.

*Id.* at 16. Toward the email Schiff stated, "Just remember, it's not harassment unless you tell me to stop." *Id.* He closed the email by inserting the ASA's name into the lyrics of a song called "Lady" and quoting the new lyrics to the ASA:

> I'm crazy for this Crazy [ASA]

5

> I'm freaking for my Crazy [ASA]
> Cause she makes me feel good
> She's so [ASA]
> Don't need all my other ladies
> I'm begging for this Crazy [ASA]
> Because I tell you she's cool
> She's divine.

*Id.*

At the trial, the ASA testified that this email was "the one that precipitated" her application for a peace order against Schiff, which she filed the next day, on July 17, 2019. 5/24/21(b) Trial Tr. at 110. Undeterred, Schiff sent another email to the ASA that day, after he was notified of the peace order. After first describing the purpose of his email as a request to ask the ASA about certain motions pending in his post-conviction proceedings, he stated:

> Otherwise, you wanna hear something crazy? Someone filed a peace order against me today, hearing took almost three hours. I thought it might be you, but I looked over the e-mails I sent you, and there were legal grounds to send each one of them, I had no intention to alarm or annoy you, furthermore you never told me to stop, so I just assumed you enjoyed my messages, you were just too busy with work to respond. Thus, what kind of idiot judge would give a [temporary peace order] for that?

Trial Ex. 5, Pet. App'x at 18. Schiff also wrote: "Anyway, look, with all this weird stuff happening to me, I've been thinking. Any chance you want to be my girlfriend?" *Id.* He continued, "I really feel a connection between you and I, and I could really use some support against whatever psycho filed this crazy [temporary peace order]." *Id.* He claimed that he had not received a copy of the peace order, stated that he was waiting to be served with it, and then wrote, "If you're too busy to reply . . . Maybe I'll see you next Friday at my hearing?" apparently referencing the peace order hearing. *Id.*

On July 18, 2019, before the peace order hearing was conducted, Schiff sent an email to the ASA's co-counsel in the original stalking case, in which he stated that he was "currently legally

6

barred from contacting the most beautiful girl in the world, and I figured I'd hit you up" and admonished her not to "play games" with him as he was "trying to be nice." Trial Ex. 3, Pet. App'x at 19. Despite that claim, Schiff included the following statement as a post-script:

> Did you actually read [the ASA's] "Peace Order" against me? I'm gonna be civil here, but holy FUCK what a mentally unstable histrionic retard. She could've just told me to stop contacting her, instead she concocted a story she's scared I'm gonna harm her. She even included extremely private information I gave her about certain cases, which puts me in danger. Like, I am just lost for words.

*Id.* The email was forwarded to the ASA.

On July 26, 2019, the peace order hearing was held. Schiff testified at the hearing and stated that he understood why his letters would cause the ASA concern and admitted that he had researched her on the internet, which he acknowledged was "freaky." 5/24/21(b) Trial Tr. at 110-11.

As a result of Schiff's appearance in the ASA's neighborhood and the communications in July 2019, which the ASA characterized as coming in "at a more rapid pace and with more concerning information," she began feeling distressed and afraid for her safety, which caused her to contact the police. 5/24/21(b) Trial Tr. at 121-23. On September 26, 2019, following an investigation, the criminal information was filed in the Circuit Court.

Even after the charges were filed, Schiff engaged in additional communications about the ASA. On February 4, 2020, as he was awaiting the jury trial date, he sent a letter to Judge Steven Salant, who had presided over his original stalking case in the Circuit Court. In that letter, Schiff asked Judge Salant to dismiss the conviction, argued about its legality, and sought to have pending motions he had filed addressed. Schiff then turned his attention to the new stalking charge against him and referenced the ASA several times, including by drawing hearts next to her name and drawing hearts with her name or initials inside of them. Schiff also referenced a different

7

prosecutor, asked Judge Salant if he had heard of her, expressed his doubt that she was more beautiful than the ASA, and ended his letter by stating that the ASA "makes me . . . cum[] in my pants." Trial Ex. 8, Pet. App'x at 23.

On February 23, 2020, Schiff wrote a letter to Judge Bair, who had presided over the first trial in the case charging Schiff with stalking and harassment of the ASA, in which he referred to the ASA as "my goddess" multiple times, and stated that he had heard that she had seen him in her neighborhood in June or July 2019 and had expressed concern that he was there to do her harm. Trial Ex. 9, Pet. App'x at 26. Schiff explained that his parents lived in the area and he had applied for jobs at a supermarket and an assisted living facility on the street, but he also acknowledged that he had determined that the ASA lived in the area based on the names of wifi networks available on the street. He also asserted that the ASA had committed perjury at the peace order hearing when she testified that she had seen Schiff in her neighborhood but had only discussed the sighting within the State's Attorney's Office, when, according to Schiff, he had information that she had discussed it with others outside the office. He concluded his letter with the statement, "Girls who commit perjury turn me the fuck on." *Id.* at 29.

At the trial, the ASA testified that Schiff's communications and conduct caused her serious emotional distress and caused her to fear for her safety. Specifically, she stated that his sexual comments about her and the fact that she saw him walking around her neighborhood forced her to leave her home and stay with someone else because she was not sure if Schiff would show up at her residence. She also testified that she had to "update [her] security and make a lot of additional arrangements in terms of personal protective things" because of Schiff's emails. 5/24/21(b) Trial Tr. at 121.

8

On May 25, 2021, the jury found Schiff guilty of stalking and harassment.  On June 24, 2021, Schiff was sentenced on the stalking count to five years of imprisonment, all suspended except for 707 days, with credit for 707 days previously served; 18 months of imprisonment on the harassment count, to run concurrently to the stalking sentence, with credit for 18 months previously served; and five years of supervised probation.  In addition to the standard conditions for probation, the court ordered that Schiff not have any contact with the ASA or with any State's Attorney's Office employees outside of official business; required Schiff to contact the Sheriff's Office if he needed to come to the courthouse and otherwise prohibited him from coming within two miles of the courthouse; required Schiff to submit to a mental health evaluation and treatment as well as drug evaluation and treatment; and established a GPS victim alert monitoring system for the ASA.

## III.   Direct Appeal

Schiff filed a direct appeal to the Court of Special Appeals of Maryland, now known as the Appellate Court of Maryland ("the Maryland Appellate Court"), for which he was represented by the Office of the Public Defender.  In his brief, he asserted two questions for review:

1.   Is the evidence sufficient to sustain the convictions for stalking and harassment?

2.   Is the evidence sufficient to sustain the convictions because the correspondence that formed the basis of the stalking and harassment convictions were based on protected speech?

State Record ("S.R.") 164. ECF No. 13-1.

As to the second issue, Schiff asserted that "ideas that are offensive, and against mainstream conventions and opinions" are protected speech.  S.R. 188-89.  He therefore argued that he had a First Amendment right to express his attraction and desire for the ASA, and that while

9

his statements "may have been socially inappropriate," they were not threatening and instead constituted free speech protected by the First and Fourteenth Amendments. S.R. 189.

On April 27, 2022, the Maryland Appellate Court issued an opinion affirming Schiff's convictions in which it engaged in detailed analysis in support of its conclusion that there was sufficient evidence to support the convictions. *Schiff v. State*, 274 A.3d 507, 517-28 (Md. Ct. Spec. App. 2022). The court characterized the second question as "Were Schiff's communications that formed the basis of the stalking and harassment convictions outside the protection of the First Amendment?" *Id.* at 512. On that issue, the Maryland Appellate Court stated that the First Amendment has "'never been thought to give absolute protection to every individual to speak whenever or wherever he [or she] pleases, or to use any form of address in any circumstances that he [or she] chooses.'" *Id.* at 528 (quoting *Polk v. State*, 835 A.2d 575, 579-80 (Md. 2003)). As relevant here, the court identified "speech integral to criminal conduct" as one category of unprotected speech. *Id.* (quoting *United States v. Stevens*, 559 U.S. 460, 468 (2010)). The court found that where the statements at issue were "speech integral" to the criminal conduct of stalking and harassment under Maryland law, "the challenged communications—perhaps with the exception of [Schiff's] letters to Judges Salant and Bair, which we do not include in our bases for affirming the decisions below—are not protected under the First Amendment." *Id.* at 528. In so ruling, the court noted that "Schiff has raised neither a facial nor an as-applied challenge to the statutes themselves." *Id.*

On May 16, 2022, Schiff filed a Motion for Reconsideration in which he argued that the failure of his counsel to use the phrase "as-applied challenge" should not preclude review of his constitutional claim. Schiff's Motion for Reconsideration was denied on May 24, 2022. The mandate issued on May 31, 2022.

10

On June 1, 2022, Schiff filed a petition for a writ of certiorari to the Court of Appeals of Maryland, now known as the Supreme Court of Maryland ("the Maryland Supreme Court"), in which he asserted 16 questions for review, including whether his speech was protected under the First Amendment and whether the State had the right under the First Amendment to "criminalize content-speech which is directed to public officials. " S.R. 307-08.  Specifically, Schiff argued that the "Maryland Stalking and Harassment laws are unconstitutional, in violation of the first amendment right to free speech . . . as applied to the facts of this case," S.R. 310, in part because the speech at issue in his case "was directed at public officials" and thus "should be construed as meeting the public-concern test." S.R. 315-16, 318.  This petition was denied on June 17, 2022.

On July 26, 2022, Schiff filed a petition for a writ of certiorari to the United States Supreme Court, which was denied on October 3, 2022.  *See Schiff v. Maryland*, 143 S. Ct. 251, 251-52 (2022).

## DISCUSSION

In his Petition for a Writ of Habeas Corpus filed with this Court, Schiff collaterally attacks his convictions under the Maryland stalking and harassment statutes on the grounds that (1) these statutes are facially unconstitutional under the Free Speech Clause of the First Amendment because they are overbroad; (2) the statutes are unconstitutional as applied to him because the statements underlying his convictions constitute protected speech under the First Amendment, primarily because they were directed at government officials in relation to a criminal case; and (3) his convictions violate the Eighth Amendment right to be free from cruel and unusual punishment because based on his First Amendment arguments, he is innocent of the crimes for which he served a sentence.

In supplemental briefing ordered by the Court, Schiff has clarified that his First Amendment claims are not based on the recent decision in *Counterman v. Colorado*, 143 S. Ct. 2106 (2023), in which the United States Supreme Court, in considering a First Amendment challenge to a conviction for stalking under a Colorado statute, held that in a criminal action relating to "true threats," the First Amendment required proof that the defendant had some subjective understanding of the threatening nature of his statements. *Id.* at 2116-17. Rather, he asserts that his First Amendment claims are "basic" free speech claims that his "speech is protected as a matter of law" and "have nothing to do with" *Counterman*. Supp. Reply at 1-2, ECF No. 30.

## I.    Legal Standard

A federal petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court adjudication is contrary to clearly established federal law under § 2254(d) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). "Under the 'unreasonable

application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). The state court's application of federal law must be "objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409). Furthermore, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

## II.     Procedural Default

Respondent primarily argues that Schiff's claims are subject to the doctrine of procedural default because he failed to assert them in his direct appeal or other state post-conviction proceedings and may no longer do so. A claim asserted in a federal habeas petition is procedurally defaulted if a "state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A claim may also be subject to procedural default when the petitioner has failed to present it to the highest state court with jurisdiction to hear it, whether by failing to raise the claim on direct appeal or in post-conviction proceedings, or by failing to timely note an appeal. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to timely note an appeal); *Murray v. Carrier*, 477 U.S. 478, 490-

91 (1986) (failure to raise a claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41,46-47 (1972) (failure to raise a claim in a state petition for post-conviction relief); *Bradley v. Davis*, 551 F. Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal the denial of post-conviction relief). The procedural default has occurred when the state court "to which the petitioner would be required to present his claims . . . would now find the claims procedurally barred." *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.l).

As discussed above, in his direct appeal to the Maryland Appellate Court, Schiff asserted two arguments: first, that "the evidence was insufficient to convict Mr. Schiff of stalking and harassment because the State failed to prove that his actions satisfied the elements of either crime," S.R. 178; and second, that "the evidence was insufficient to sustain the convictions because the correspondence that formed the basis of the stalking and harassment convictions were based on protected speech," S.R. 188. Respondent argues that Schiff's present claims were not presented on direct appeal. Where Schiff's only reference to the First Amendment focused on whether his own specific statements were protected speech, and on direct appeal the Maryland Appellate Court specifically stated that no facial challenge was asserted, *Schiff*, 274 A.3d at 529, there is no serious dispute that the First Amendment facial challenge was not asserted on direct appeal. Likewise, Schiff plainly did not assert an Eighth Amendment challenge on direct appeal. Although Schiff has not yet filed a state petition for post-conviction relief pursuant to the Uniform Postconviction Procedure Act, Md. Code Ann., Crim. Proc. §§ 7–101 to 7–301 (LexisNexis 2018), under that statute, where, as here, a claim could have been raised on direct appeal but was not, the claim is waived and may not be raised in a state post-conviction petition. *Id*. § 7–106(b)(1)(i). Thus, the First Amendment facial challenge and the Eighth Amendment claim are procedurally defaulted.

14

The Court, however, does not conclude that Schiff's fact-specific First Amendment claim is subject to procedural default. Respondent argues that this claim, which Schiff referred to in the Petition as an "as applied" claim, was not asserted on direct appeal and focuses on the fact that the Maryland Appellate Court stated in its opinion that "Schiff has raised neither a facial nor an as-applied challenge to the statutes themselves." *Schiff*, 274 A.3d at 529. Schiff, however, argues that the phrasing of his claim on direct appeal, which referenced whether there was sufficient evidence to support the convictions in light of the fact that his statements were protected speech, was the choice of his attorney but that the claim was intended to be an as-applied challenge. Indeed, in its brief on the direct appeal, the State acknowledged that in his First Amendment argument, Schiff "appear[ed] to challenge the laws as applied to him." S.R. 234 n.8. Notably, in a Motion for Reconsideration of the denial of the direct appeal, Schiff argued that he had advanced such a challenge even if the term "as-applied" was not used. S.R. 299.

Despite its assertion that Schiff had not asserted an as-applied challenge, the Maryland Appellate Court did not limit its analysis of the First Amendment claim to the sufficiency of the evidence but instead characterized his argument as presenting the question "Were Schiff's communications that formed the basis of the stalking and harassment convictions outside the protection of the First Amendment?", actually addressed the merits of that claim, and concluded that "Schiff's challenged communications . . . are not protected under the First Amendment." *Schiff*, 274 A.3d at 512, 529. Thus, Schiff presented, and the Maryland Appellate Court ruled on, an argument that the specific statements underlying his convictions for stalking and harassment were protected First Amendment speech that may not support such convictions. Notably, in a supplemental filing entitled "Motion for Leave to Amend Petition," ECF No. 16, Schiff reiterated that the argument he presented on direct appeal was the functional equivalent of an as-applied

15

challenge to the criminal statutes but also stated that, to the extent that the Court deemed it to be a different argument, the Court should "consider Schiff's free speech claims, under a sufficiency claim." *Id.* Schiff has thus clarified that, however the claim is characterized, he is seeking federal habeas review of the same fact-specific First Amendment claim that he presented to, and that was rejected by, the Maryland Appellate Court on direct appeal. Accordingly, the Court finds that this claim is not subject to procedural default.

As for the First Amendment facial challenge and the Eighth Amendment claim that are procedurally defaulted, a federal court may still address the merits of a state prisoner's procedurally defaulted habeas claim if the petitioner can show both cause for the default and actual prejudice that would result from failing to consider the claim on the merits. *See Murray*, 477 U.S. at 478, 494-95; *Breard*, 134 F.3d at 620. "Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). To demonstrate prejudice, the petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Here, Schiff has not demonstrated cause for the procedural default, as he has identified no external factor that prevented him from presenting these claims on direct appeal. Indeed, the abundance of filings by Schiff in the state courts belies any claim that he was somehow unable to present these particular claims in his direct appeal filing. As for prejudice, Schiff's discussion relating to these two claims does not demonstrate how these alleged errors created "actual and

16

substantial disadvantage" to him at trial. *Id.* To the extent there could be any prejudice to him, it would arise from the fact-specific First Amendment claim, which will be addressed on the merits.

Even in the absence of cause and prejudice, the Court must also consider whether it should reach the merits of Schiff's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314–15 (1995). A fundamental miscarriage of justice results when the failure to consider the claim on the merits would maintain the incarceration of someone who is actually innocent. *See Murray*, 477 U.S. at 495-96. "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson,* 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324). New evidence may consist of "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citation omitted).

Schiff has offered no new evidence of this type, certainly none that would "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. Although Schiff has asserted actual innocence in the Petition, both generally and in relation to the Eighth Amendment claim, that claim relies entirely on the legal argument underlying his fact-specific First Amendment claim—that the statements underlying his convictions are protected speech under the First Amendment. Where that claim will be addressed below, Schiff has not put forth a credible claim of actual innocence based on "new evidence" that would justify excusing the procedural default relating to the First Amendment facial challenge or the Eighth Amendment claim. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (noting that "tenable actual-innocence gateway pleas are rare"). Where Schiff has failed to establish cause or prejudice for the procedural default of those claims, or a basis to conclude that

17

the failure to reach those claims would result in a fundamental miscarriage of justice, the merits of Schiff's First Amendment facial challenge and Eighth Amendment claim will not be addressed.

## III.   First Amendment

In the Petition, Schiff argues that his convictions under the Maryland stalking and harassment laws, Md. Code Ann., Crim. Law §§ 3–802, 3–803, must be vacated because the "alleged crime itself stemmed, literally, from the content of the speech" and was only criminalized because it caused emotional distress, and because the statements underlying his convictions related to matters of public concern and were directed to public officials, such that they were protected speech under the First Amendment. As relevant here, the Maryland harassment statute prohibits a person from "maliciously engag[ing] in a course of conduct that alarms or seriously annoys [another]: (1) with the intent to harass, alarm, or annoy the other; (2) after receiving a reasonable warning or request to stop by or on behalf of the other; and (3) without a legal purpose." *Id.* § 3–803(a). The harassment statute contains an exception for "peaceable activity intended to express a political view or provide information to others." *Id.* § 3–803(b). The Maryland stalking statute criminalizes a "malicious course of conduct . . . where . . . the person intends to cause or knows or reasonably should have known that the conduct would cause serious emotional distress to another." *Id.* § 3–802(a)(1), (c).

In rejecting Schiff's First Amendment argument on direct appeal, the Maryland Appellate Court held that because Schiff's sexually charged statements to the ASA amounted to conduct constituting stalking and harassment, they were "integral to criminal conduct" and thus not protected by the First Amendment. *Schiff*, 274 A.3d at 528-29. Specifically, the court found that Schiff's statements to and about the ASA could constitute the conduct violating the Maryland harassment statute because they comprised a course of conduct that alarmed or seriously annoyed

18

the ASA, conducted with "the intent to harass, alarm, or annoy" her. *Id.* at 527. The court also found that these statements could constitute the malicious course of conduct through which Schiff intended to cause, or knew or reasonably should have known would cause, serious emotional distress to another, in violation of the stalking statute. *Id.* at 518-19, 521-23. Addressing Schiff's argument that his statements were protected speech because they were directed to a public official and served a legal purpose, the court found that "because a piece of correspondence serves *some* legal purpose does not isolate all other parts of the correspondence from scrutiny," and that a factfinder could properly "separate out parts of a communication unrelated to a legal purpose and find those to be harassing." *Id.* at 526. Under this principle, the court found that the July 17, 2019 email to the ASA and the July 18, 2019 email to the ASA's colleague could properly support a conviction for harassment, but that the letters sent to the judges, which "primarily relate[d] to legal matters" and were sent to individuals "sufficiently removed from the victim" could violate the First Amendment. *Id.* at 526-27.

Under the standards set forth in 28 U.S.C. § 2254(d), this Court finds that the Maryland Appellate Court's ruling on Schiff's First Amendment claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law. The First Amendment's Free Speech Clause prohibits Congress from making any law "abridging the freedom of speech," U.S. Const. amend. I, and the Fourteenth Amendment renders the Free Speech Clause applicable to the states. *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). Nevertheless, the Supreme Court has long recognized that the Free Speech Clause "has 'permitted restrictions upon the content of speech in a few limited areas,' and has never 'include[d] a freedom to disregard these traditional limitations.'" *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *R.A.V. v.*

*City of St. Paul*, 505 U.S. 377, 382-83 (1992)).  Speech that is "integral to criminal conduct" is one such category of speech that is not protected by the First Amendment.  *Id.* at 468-69.

Here, Schiff has identified no Supreme Court decision, or other controlling or persuasive authority, finding that speech that constitutes the conduct that violates a stalking or harassment statute cannot be considered speech "integral to criminal conduct" unprotected by the First Amendment.  *Id.*  To the contrary, the United States Court of Appeals for the Fourth Circuit, as well as other United States Courts of Appeals, have rejected as-applied First Amendment challenges to convictions under similar statutes where the offending conduct consisted of or included communications or expressive activity.  In *Thorne v. Bailey*, 846 F.2d 241 (4th Cir. 1988), the Fourth Circuit rejected an as-applied First Amendment challenge to a West Virginia telephone harassment statute which made it "unlawful for any person with intent to harass or abuse another by means of telephone to" make obscene comments or to make "repeated telephone calls, during which conversation ensues, with intent to harass any person at the called number."  *Id.* at 242 n.1 (quoting W.Va. Code § 61-8-16(a) (1984)).  Where the defendant, a suspended university student, had made numerous calls to university officials, including after- hours calls to their homes, and where the conversation not only consisted of asking for an explanation for why he was not allowed to register for classes but also included calling university officials derogatory names, the court upheld the statute as applied to the defendant, in part because harassment "is not communication, although it may take the form of speech," and the statute required proof of an intent to harass.  *Id.* at 242-44; *see also United States v. Waggy*, 936 F.3d 1014, 1016-17, 1020 (9th Cir. 2019) (rejecting an as-applied First Amendment challenge to a Washington telephone harassment statute where the defendant, while calling an employee of the United States Department of Veterans Affairs to demand money allegedly owed to him, repeatedly berated the employee with the intent

to harass). *Cf. Galloway v. State*, 781 A.2d 851, 855, 876-878 (Md. 2001) (rejecting a First Amendment facial challenge to a previous version of the Maryland harassment statute and upholding a conviction where the defendant's harassment consisted primarily of letters sent to the victim).

Similarly, in *United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014), the United States Court of Appeals for the Ninth Circuit rejected an as-applied First Amendment challenge to the federal stalking statute, 18 U.S.C. § 2261A, which criminalizes "engag[ing] in conduct that . . . causes . . . or would be reasonably expected to cause substantial emotional distress" with the "intent to kill, injure, harass, intimidate, or place under surveillance with the intent to kill, injure, harass, or intimidate another person." *Osinger*, 753 F.3d at 947-48; 18 U.S.C. §§ 2261A(1)(B), (2)(B). In finding that the defendant's communications, which consisted of threatening and sexually explicit text messages, emails, and photographs of the victim that were sent to the victim and her co-workers, were not protected speech, the court held that "[a]ny expressive aspects of [the defendant's] speech were not protected under the First Amendment because they were 'integral to criminal conduct.'" *Osinger*, 753 F.3d at 941-42, 947; *see also United States v. Sayer*, 748 F.3d 425, 433-34 (1st Cir. 2014) (in rejecting an as-applied First Amendment challenge to 18 U.S.C. § 2261A(2)(A), finding that the defendant's creation of fake online advertisements to cause men to go to the victim's home seeking sexual interactions was integral to criminal conduct and was not protected speech). In light of such precedent, the Court finds unpersuasive Schiff's argument that his convictions violated the First Amendment because the crime stemmed from "the content of the speech," Pet. at 13, ECF No. 1, and concludes that the Maryland Appellate Court's determination that Schiff's communications were not protected speech because they were integral to criminal

conduct was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

More specifically, Schiff claims that his communications were protected speech under the First Amendment because they were directed at public officials and related to his criminal case. Although Schiff cites three Supreme Court cases in support of his argument, he has not identified any clearly established federal law demonstrating that a stalking or harassment conviction cannot be based on communications directed at public officials, including when the defendant had some basis for engaging those officials. In *Snyder v. Phelps*, 562 U.S. 443 (2011), in which the Supreme Court stated that speech in public places on issues of "public concern" is entitled to "special protection" under the First Amendment, the issue was whether an interest group engaged in peaceful picketing near military funerals could be subjected to civil tort liability for intentional infliction of emotional distress. *Id.* at 458-59. *Snyder* is inapplicable here because it relates to protests on matters of public policy, while Schiff's sexually charged statements about the ASA had nothing to do with public policy, and because it did not address direct communications to an individual such as those at issue in a stalking or harassment charge.

In *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Court held that when a public official brings a libel action against critics of his official conduct, First Amendment principles require that actual malice be established. *Id.* at 269-70, 283-84. In *Garrison v. Louisiana*, 379 U.S. 64 (1964), in which a prosecutor was convicted of criminal defamation for disparaging judges for their judicial conduct, the Court held that sanctions for criticism of official conduct of public officials may be imposed only for making false statements with knowledge of their falsity or with reckless disregard for their truth. *Id.* at 65-67, 78-79. While these cases demonstrate that First Amendment protections for criticism of public officials are particularly robust, they do not address

22

the question of whether and how stalking and harassment laws can apply to communications with public officials and in no way establish that communications with public officials can never form the basis for a criminal violation of such statutes.

Rather, the Maryland Appellate Court's conclusion that the fact that some part of a communication with a public official may have a lawful purpose "does not isolate all other parts of the correspondence from scrutiny," *Schiff*, 274 A.3d at 526, finds support in the case law. For example, in *United States v. Waggy*, 936 F.3d 1014 (9th Cir. 2019), the defendant was convicted under a Washington state telephone harassment statute after making a series of phone calls to a United States Department of Veterans Affairs ("VA") Medical Center during which he demanded money that he believed was owed to him but also repeatedly berated the executive secretary who answered the phone calls, including using obscene language and insulting her ability to do her job. *Id.* at 1016-17, 1019. In rejecting the defendant's claim that his statements were protected speech under the First Amendment because he just "wanted to talk about his medical care and the VA's unpaid bills" and "he was merely criticizing a government official," the court held that the fact that the defendant "included some criticism of the government [in his phone calls] does not necessarily imbue his conduct with First Amendment protection." *Id.* at 1018-19. Where *Waggy* demonstrates that there is no absolute First Amendment protection for speech directed at public officials such that an individual cannot be prosecuted under stalking and harassment statutes for such communications, and Schiff has identified no Supreme Court precedent establishing that such protection is clearly established in federal law, the Court cannot find that the Maryland Appellate Court's determination that Schiff's communications to the ASA and her colleague were not protected speech was an unreasonable application of clearly established federal law.

23

This conclusion is bolstered by the specific facts of this case. The communications supporting the convictions, as found by the Maryland Appellate Court, are entirely different than the kind of criticism of the official conduct of public officials at issue in cases such as *Sullivan* and *Garrison*, or the kind of advocacy on issues of public concern at issue in *Snyder*. Rather, the communications underlying the convictions consist of Schiff's personal expressions of sexual attraction to the ASA. The Maryland Appellate Court found that Schiff's July 17, 2019 email to the ASA in which he asked her to be his girlfriend, and his July 18, 2019 email to the ASA's colleague in which he called the ASA "a mentally unstable histrionic retard" could support a harassment charge and thus necessarily were not protected speech under the First Amendment. *Schiff*, 274 A.3d at 526-27. The court also found that with the exception of the letters sent to the judges, the other communications at issue were likewise not protected by the First Amendment. *Id.* at 529. These communications included Schiff's March 2018 letter to the Montgomery County police officer, which was then shared with the ASA, in which he stated that he planned to create a "State's Attorney Barbie" that would say phrases such as "Mr. Schiff, I legally consent to you having your way with me," 5/24/21(b) Trial Tr. at 89-91, as well as Schiff's July 16, 2019 email to the ASA in which he stated, "After what I saw at the trial, I truly believe you are (by my standards) quite possibly the hottest girl I've ever seen," Trial Ex. 7, Pet. App'x at 14. At the end of that email, Schiff inserted the ASA's name into a song's lyrics such that they read: "I'm crazy for [the ASA] . . . I'm freaking for [the ASA] . . . Cause she makes me feel good." *Id.* at 16. The Maryland Appellate Court's conclusion that these communications, which did not address matters of public concern but instead served to convey Schiff's sexual obsession with the ASA, were not protected speech under the First Amendment was not contrary to clearly established federal law, particularly where it does not constitute a "conclusion opposite to" a Supreme Court ruling on a

question of law or reach a different conclusion from relevant Supreme Court precedent on a case involving "materially indistinguishable" facts. *Williams*, 529 U.S. at 405. Finally, where the facts underlying the Maryland Appellate Court's ruling, specifically Schiff's communications to and about the ASA, derive from the undisputed trial record, the court's ruling is not "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The Petition will therefore be denied as to Schiff's as-applied First Amendment claim.

## IV. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" on a § 2254 petition. Because the accompanying Order is a final order adverse to the applicant, Schiff must receive a certificate of appealability before an appeal may proceed. 28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a petition is denied on procedural grounds, the petitioner meets the standard with a showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis,* 137 S. Ct. 759, 773-74 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

25

Here, Schiff's claims are dismissed on both procedural and substantive grounds. Upon review of the record, this Court finds that he has not made the requisite showing as to any of his claims. The Court therefore declines to issue a certificate of appealability. Schiff may still request that the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b).

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be DISMISSED and DENIED. The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date: November 7, 2024

THEODORE D. CHUANG
United States District Judge